## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. VELA, | : | Civil No. 1:23-CV-01043 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KELLY CHRISOPHER, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court is Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 11.)  Because Michael J. Vela ("Plaintiff") has failed to exhaust his administrative remedies, Defendants' motion to dismiss will be granted and the case will be closed.

### PROCEDURAL HISTORY

Plaintiff, an inmate currently housed at the State Correctional Institution in Waymart, Pennsylvania ("SCI-Waymart"), initiated this action in June of 2023 by filing a complaint pursuant to 42 U.S.C. § 1983 naming seven defendants: (1) Kelly Christopher ("Christopher"), Corrections Officer 1; (2) Moser, Captain/Shift Commander; (3) C.J. McKeown ("McKeown"), Hearing Examiner; (4) Kelley, Corrections Officer 1; (5) Sergeant Hyde ("Hyde"), Corrections Officer 2; (6)

Gilbert, Correctional Officer 2; and (7) Sergeant Fisher ("Fisher").  (Doc. 1.)  He brought claims against all Defendants in their official capacities.  (*Id*., p. 4.)[1]

The complaint alleges that on July 31, 2022, at approximately 7:01 a.m. Defendant Christopher sprayed him in the face with pepper spray "for no reasons. cruel and unusual punishment."  (*Id*., p. 12.)  Plaintiff elaborated that "I was sitting on my bed, Ms. Christopher put the spray 5 inches from my face and sprayed me." (*Id*., p. 13.)  Plaintiff alleges the use of spray was "completely unprovoked" and that there is a two-foot rule.  (*Id*.)  He then alleges that Defendant Christopher wrote a frivolous misconduct claiming that he stood up off his bunk and came rapidly towards her.  (*Id*.)

Plaintiff alleges that Defendant Mosel arrived on the block with "the team" and was told by staff and inmates that Defendant Christopher was lying.  (*Id*.) Plaintiff was taken to the restricted housing unit ("RHU") and strip searched.  (*Id*.) Plaintiff alleges that on camera the Corrections Officers were laughing at him. (*Id*., p. 14.)  Plaintiff raises a Fourth Amendment challenge to this strip search. (Doc. 1, p. 13.)

He also alleges that medical attention was delayed for 42 minutes.  (*Id*., p.14.)  Plaintiff alleges that "[t]hey" would not permit him to shower for 24 hours to wash off the pepper spray and then states "cruel and unusual punishment."  (*Id*.)

---

[1] For ease of reference the court uses the page numbers from the CM/ECF header.

Plaintiff alleges that the hearing examiner, Defendant McKeown, found him guilty of the misconduct without allowing him to call witnesses or present evidence.  (*Id*.)  The misconduct was overturned on appeal.  (*Id*., p. 15.)

Plaintiff alleges that an unknown Corrections Officer, Ms. Laslopio, and Ms. Waymon reported that Defendant Christopher was lying, and Ms. Waymon confirmed that Defendant Christopher "had it out for plaintiff."  (*Id*.)  Plaintiff also alleges that five inmates contradicted Defendant Christopher's statement.  (*Id*.)  He further alleges that Defendant Christopher was fired soon after.  (*Id*.)  Defendant Hyde allegedly told Defendant Christopher what to write in the misconduct report. (*Id*., p. 16.)  Plaintiff alleges that Defendant Kelley told Inmate Smith about Defendant Christopher being fired and that Defendants Kelley and Christopher were friends.  (*Id*.)  Plaintiff alleges that Defendant Kelley continually harassed Plaintiff by making him change beds, forcing him to go to school after having his wisdom teeth pulled, calling him gay, and stating he was having sexual relations with other inmates.  (*Id*., p. 17.)  Plaintiff states that he filed a Prison Rape Elimination Act ("PREA") complaint against Defendant Kelley and is currently seeking to raise a PREA claim, a defamation claim, and a "slander libel and false light" claim.  (*Id*.)

Plaintiff alleges that Defendant Gilbert accused him of "talking shit" while Plaintiff was walking away from him.  (*Id*.)  Plaintiff alleges that he said nothing.

(*Id*.)  Defendant Gilbert then allegedly ordered him to sit on the wall and any movement or talking would result in him slamming Plaintiff on the floor.  (*Id*., p. 18.)  Plaintiff states that Defendant Gilbert "was in my face screaming and swearing at me."  (*Id*.)  Plaintiff alleges that Defendant Gilbert then searched him aggressively, not by doing a pat search, but by grabbing him "hard" and "with jerky movements."  (*Id*.)  He alleges that this search was a violation of the Fourth Amendment.  (*Id*.)

Plaintiff further alleges that Defendant Gilbert told him "one more time and that ass is mine."  (*Id*.)  He also states that Defendant Gilbert "stares me down with angry looks every time he sees me in the Hallway."  (*Id*., p. 18.)  Plaintiff states that he reported the issue to Defendant Fisher, who threatened to take him to the RHU.  (*Id*., 19.)

Attached to the complaint is misconduct D341554.  (Doc. 1-2.)  In the complaint, Plaintiff states that he did not refuse to move as claimed by Defendant Christopher.  (Doc. 1, p. 13.)

Plaintiff requests that the court "review this complaint as a campaign of harassment as tabooed by the courts," and cites *Smith v. Central Dauphin School District*, 355 Fed. Appx. 658 (3d Cir. 2009).  (Doc. 1, p. 12.)

Plaintiff states that he did not file a grievance in the Department of Corrections ("DOC") because "[t]he Grievance system [does] not cover staff

abuse." (*Id.*, pp. 7–8.)  He further stated that "Lt. Karworski spoke to me after receiving a staff abuse complaint from staff [and] inmates on or about 8/3/22." (*Id.*, p. 8.)

On July 21, 2024, the court ordered waivers of service be sent to the named Defendants.  (Doc. 6.)  Defendants appeared in the action on August 23, 2023.  (Doc. 9.)  They filed a motion to dismiss on September 22, 2023.  (Doc. 11.)  Defendants filed a brief in support of the motion to dismiss on October 6, 2023.  (Doc. 14.)  Plaintiff filed a brief in opposition of the motion to dismiss on November 24, 2023.  (Doc. 17.)  Defendants did not file a reply.  The court will now address the pending motion to dismiss.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Waymart, in Wayne County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b); (Doc. 1, p. 4.).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents"
attached to a defendant's motion to dismiss if the plaintiff's claims are based upon
these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing
*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196
(3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and
held to a less stringent standard than formal pleadings drafted by attorneys. *See*
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193
(3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be
granted leave to file a curative amended complaint even when a plaintiff does not
seek leave to amend, unless such an amendment would be inequitable or futile.
*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.
2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which
affirmatively demonstrate that the plaintiff has no right to recover is properly
dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d
103, 106 (3d Cir. 2002).

## DISCUSSION

Defendants argue that all claims should be dismissed because Plaintiff failed
to exhaust his administrative remedies. (Doc. 14, pp. 4–8.)

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United* States, 904 F.3d 257, 266–67 (3rd Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

While exhaustion is required under the PLRA, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Accordingly, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural

rules." *Woodford*, 548 U.S. at 90; *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (concluding that prisoner failed to exhaust when he did not name defendant in his grievance as required by the prison grievance procedure).

Plaintiff alleges that ADM 804 does not allow for the reporting of inmate abuse by staff.  (Doc. 1, p. 6.)  However, Plaintiff is mistaken.

There are two means for reporting inmate abuse: DOC-ADM 804 and DC-ADM 001.  Throughout 2023, the Third Circuit Court of Appeals tackled the difference between these two policies and the exhaustion requirement.  In January, the Circuit Court outlined the difference between the two policies:

> DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances.  An inmate's submission of a written grievance is reviewed and results in an Initial Review Response or Rejection explaining the disposition of the inmate's grievance. Upon receipt of either response, an inmate has fifteen days to file an appeal with the Facility Manager.   DC-ADM 804, § 2.A.   Upon the Facility Manager's resolution of that appeal, the inmate may file for Final Review by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  DC-ADM 804, § 2.B.

> DC-ADM 001 is designed specifically for allegations of abuse and is much more flexible.  An inmate may 1) report abuse orally or in writing to any staff member, 2) file a grievance according to DC-ADM 804's strictures, or 3) send a written report to the Office of Special Investigations and Intelligence ("OSII").  Once an inmate has reported abuse under DC-ADM 001, an investigation is conducted by the Security Office and the complainant must be notified in writing of the investigation's outcome.  DC-ADM 001 § 1.C.  If the outcome is not satisfactory, the inmate must then go through the same appeals process described above for DC-ADM 804.  DC-ADM 001 § 1.B. Both DC-ADM 001 and 804 require an inmate who is dissatisfied

with the results of an initial investigation to appeal for Final Review
by SOIGA before the matter can be brought to an Article III court.

*Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023).

In August, the Circuit Court clearly stated in a precedential opinion that

ADM 804 "is the exclusive means of exhaustion," so failure to "follow the full

administrative review process under ADM 804" results in a failure to exhaust

under the PLRA.  *Prater v. Dep't of Corr.*, 76 F.4th 184, 204 (3d Cir. 2023).

Then in October, the Circuit Court applied *Prater* in an inmate abuse case in

an unpublished decision:

> The District Court noted that whether an inmate may use DC-ADM
> 001 to exhaust his administrative remedies was, at that time, an open
> question.  ECF Nos. 109 at 10 (noting disagreement among the district
> courts), 115 at 4-6.  It determined that, even assuming so, Everett had
> failed to raise a genuine issue of material fact as to whether he had
> properly exhausted his administrative remedies.   While Everett's
> appeal was pending, however, we decided *Prater v. Department of
> Corrections*, Nos. 19-1732, 20-2254, & 20-2897, —— F.4th ——,
> 2023 WL 4921855, *13 (3d Cir. Aug. 2, 2023), in which we held that
> "ADM-804 is the exclusive means" by which Pennsylvania prisoners
> can exhaust their claims under the PLRA.  As we explained, DC-
> ADM 001 provides a procedure by which inmates can report abuse,
> but it does not require a formal grievance to initiate an investigation,
> nor does it require that the alleged abuse violate an inmate's legal
> rights to warrant relief, both of which are required for an inmate to
> obtain meaningful relief in federal court.  *Id*. at *12.  Thus, while the
> policies work "in tandem," they are not "interchangeable," and a
> prisoner must fully comply with the administrative review process
> under ADM 804 to satisfy the exhaustion requirement.  *Id*. at *13.

*Everett v. Robinson*, No. 22-2890, 2023 WL 6458850 (3d Cir. Oct. 4, 2023).  Since

ADM 804 is the exclusive means for Plaintiff to exhaust his claims under the

PLRA, and it does cover inmate abuse, Plaintiff's failure to exhaust is fatal to his

claims.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be

granted and the case will be closed.  An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 22, 2024